IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
IN OPEN COURT

FEB 1 8 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:11cr9 |
| | ) | |
| TRENTON HAWKINS | ) | |

## STATEMENT OF FACTS

If this case had proceeded to trial, the government would have been able to prove the following facts beyond a reasonable doubt:

In late December 2007 or early January 2008, Donald Davis, Jr. approached Trenton Hawkins about transporting currency to Texas. Hawkins initially told Davis that he was not interested in taking the currency to Texas. A few weeks later, Davis introduced Hawkins to Michael Cromwell, who Hawkins called "Charlie." Hawkins stated that he believed that "Charlie's" real first name was Mike. During this meeting, Cromwell said that he wanted Hawkins to transport currency to Texas because Hawkins had a trucking company and made frequent trips to Texas. Hawkins agreed to transport the currency to Texas on his next trip.

A short time later, Hawkins was going to make a trip to the Texas area so Davis met with Hawkins and gave Hawkins a duffle bag. Davis informed Hawkins that the duffle bag contained an undisclosed amount of currency. Hawkins then transported the duffle bag to Texas. When Hawkins arrived in San Antonio, Texas, Hawkins met with an unknown Hispanic male at a car wash. Hawkins then turned the duffle bag over to the unknown Hispanic male.

Hawkins stated that upon his return to Virginia, he met with Davis and that Davis paid Hawkins between $12,000 and $15,000 for transporting the currency.

Approximately 2 to 3 weeks later, Hawkins met with Davis. During this meeting, Davis told Hawkins that Davis' father was transporting narcotics and currency for Davis and his

"brother," Cromwell. Davis stated that his father had stolen an unknown amount of narcotics and currency from the Mexicans. Davis stated that he and Cromwell were trying to find their father but were unable to locate him. During this conversation, Davis asked Hawkins if he would be willing to transport currency to Texas and bring back cocaine. Hawkins agreed.

Prior to Hawkins making the second trip to Texas, Hawkins met with Davis and Davis gave Hawkins a bag which contained an unknown amount of currency. Hawkins and an unindicted coconspirator drove the currency to Texas where they met with the same unknown Hispanic male. Hawkins gave the man the bag that contained the currency and the man gave Hawkins a suitcase that contained an unknown amount of cocaine. Upon Hawkins' return to Virginia, Hawkins met with Davis at a car wash. Hawkins then gave Davis the suitcase that contained the unknown amount of cocaine. Hawkins received 2 to 3 kilograms of cocaine from this shipment of cocaine.

A couple of weeks later, Hawkins and an unindicted coconspirator transported another bag of currency to Texas for Davis and Cromwell. As Hawkins was driving to Texas, the Hispanic male was continuously calling Hawkins to find out Hawkins' location. When Hawkins arrived in San Antonio, Texas, Hawkins met with the Hispanic male at a truck stop. Hawkins stated that the Hispanic male was operating a grey sports utility vehicle. Hawkins put the bag that contained the unknown amount of currency into the grey sports utility vehicle and the Hispanic male then gave Hawkins a suitcase that contained approximately 14 to 15 kilograms of cocaine. Upon Hawkins' return to Virginia, he met with Cromwell and gave Cromwell 2 to 3 kilograms of cocaine from the suitcase. Cromwell then instructed Hawkins to give Davis 7 of the kilograms of cocaine and Hawkins kept the remaining 5 kilograms of cocaine. Once Hawkins sold his 5 kilograms of cocaine, Hawkins gave an unindicted coconspirator half of the proceeds that Hawkins made from the 5 kilograms of cocaine for assisting Hawkins with transporting the currency to Texas and the cocaine back to Virginia.

Shortly after this trip, Hawkins received a three way phone call from Cromwell and an unknown Hispanic male. During this conversation, Hawkins informed Cromwell and the unknown Hispanic male that he (Hawkins) was tired of transporting cocaine for the organization.

Approximately a month after Hawkins informed Cromwell and the unknown Hispanic male that he was tired of transporting cocaine, Hawkins agreed to transport an unknown amount of currency to Texas. Prior to making the trip to Texas, Hawkins met with Davis and Davis gave Hawkins a duffle bag which contained an unknown amount of currency. Hawkins and an unindicted coconspirator then drove the currency to San Antonio, Texas where they met with the Hispanic male's brother. Hawkins gave the Hispanic male's brother the bag that contained the currency. Hawkins and the unindicted coconspirator then returned to Virginia without any cocaine. Upon Hawkins and the unindicted coconspirator's return to Virginia, Davis paid Hawkins between $2,500 and $3,500 for transporting the currency to Texas.

Approximately 1 to 2 weeks later, Hawkins and the unindicted coconspirator went back to San Antonio, Texas to pick up a load of cocaine. Hawkins did not take any currency to San Antonio, Texas on this particular trip. Hawkins and the unindicted coconspirator stayed in a hotel in San Antonio, Texas while the unknown Hispanic males got the cocaine ready for transport. The unknown Hispanic male gave Hawkins 7 kilograms of cocaine. Hawkins and the unindicted coconspirator then transported the cocaine back to Virginia. Upon Hawkins and the unindicted coconspirator's return to Virginia, Hawkins gave Davis 2 of the kilograms of cocaine and Hawkins kept 5 of the kilograms. A few days later, Hawkins gave Davis 1 additional kilogram of cocaine from the original 5 kilograms of cocaine that Hawkins kept upon his return to Virginia.

A few weeks later, Hawkins and the unindicted coconspirator went back to San Antonio, Texas with a duffle bag which contained an unknown amount of currency. When Hawkins and the unindicted coconspirator arrived in San Antonio, Texas, they met with the Hispanic male in a

parking lot that was near a hotel. Hawkins gave the Hispanic male the duffle bag that contained the currency. In return, the Hispanic male gave Hawkins a suitcase that contained 20 kilograms of cocaine. Hawkins and the unindicted coconspirator then transported the cocaine back to Virginia. When Hawkins returned to Virginia, Hawkins gave 8 of the kilograms to Davis and Hawkins kept 12 of the kilograms of cocaine. Once Hawkins sold his 12 kilograms of cocaine, he gave the unindicted coconspirator between $4,000 and $5,000 for assisting Hawkins with transporting the currency to Texas and bringing the cocaine back to Virginia. Hawkins owed Cromwell $32,000 for each kilogram of cocaine and Hawkins subsequently paid Cromwell approximately $390,000 for the 12 kilograms of cocaine. Hawkins was charging various individuals in Virginia between $34,000 and $36,000 for a kilogram of cocaine.

On June 6, 2009, Immigration and Customs Enforcement and the Virginia Beach Police Department received information that Trenton Hawkins and an unindicted coconspirator intended to travel from Portsmouth, Virginia to San Antonio, Texas to obtain approximately 30 kilograms of cocaine for distribution in the Hampton Roads area of Virginia. On June 7, 2009, Hawkins and the unindicted coconspirator were stopped in Rankin County, Mississippi for a traffic violation and $690,484 in U.S. currency was discovered in the vehicle. Hawkins and the unindicted coconspirator were both arrested and charged with money laundering.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
Laura M. Everhart
Assistant United States Attorney
Virginia Bar No. 22327
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
Email: laura.everhart@usdoj.gov

<u>Defendant's Signature</u>: After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
TRENTON HAWKINS
Defendant

<u>Defense Counsel's Signature:</u>  I am TRENTON HAWKINS' attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Attorney for the Defendant